AO 91 (5/85) Criminal Complaint

# United States District Court

SOUTHERN  DISTRICT OF  OHIO

UNITED STATES OF AMERICA
V.

DARYL LAWRENCE

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 2:05-mj-15-TK

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about January 6, 2005 in Franklin county, in the SOUTHERN District of Ohio defendant(s) did, (Track Statutory Language of Offense)

SEE ATTACHMENT A

in violation of Title 18 United States Code, Section(s) 2113(a) and (d); 924(c)

I further state that I am a(n) Special Agent and that this complaint is based on the following facts:

SEE ATTACHMENT B

continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

Signature of Complainant KEVIN HORAN,
SPECIAL AGENT, FBI

Sworn to before me and subscribed in my presence,

January 8, 2005
Date

at

Columbus, Ohio
City and State

Terence P. Kemp - U.S. Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

ATTACHMENT A

COUNT 1

On or about January 6, [init] 2005, in the Southern District of Ohio, the defendant, DARYL LAWRENCE, by force and violence and by intimidation, did attempt to take from the person and presence of Fifth Third employees, money belonging to and in the care, custody, control, management and possession of Fifth Third Bank, 6265 E. Broad Street, Columbus, Ohio, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and the defendant, DARYL LAWRENCE, in committing the aforesaid offense, did put in jeopardy the lives of employees and customers of said bank by means and use of a dangerous weapon, that is, a loaded firearm.

In violation of 18 U.S.C. §§ 2113(a) and (d).

COUNT 2

On or about January 6, 2005, in the Southern District of Ohio, the defendant, DARYL LAWRENCE, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, to wit: attempted armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d), did knowingly use and carry, and in furtherance of such attempted armed bank robbery, did knowingly possess a loaded firearm, and in the course of committing said attempted armed bank robbery offense, DARYL LAWRENCE did knowingly and intentionally brandish and discharge said firearm.

In violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and (iii).

## AFFIDAVIT

1. Your affiant, Kevin R. Horan, is employed by the Federal Bureau of Investigation as a Special Agent assigned to the Violent Crimes Squad, Cincinnati Division, Columbus, Ohio Resident Agency. My duties include investigating bank robberies, fugitives, narcotics and criminal enterprises. I have been employed in this position for approximately nine years. Prior to my assignment as a Special Agent, I was employed as an Assistant Prosecuting Attorney for the Montgomery County Prosecutor's Office in Dayton, Ohio for four and one half years.

2. On January 6, 2005, at approximately 10:40 a.m., Fifth Third Bank located at 6265 East Broad Street, Columbus, Ohio was robbed by a lone black male. Investigation revealed the subject entered the bank armed with a silver, semi-automatic pistol. After ordering customers to the ground, the subject ran towards the teller counter with his gun pointing at employees.

3. Columbus Police Officer Bryan Hurst was stationed behind the teller counter working a special duty assignment. As the subject approached the counter, he began firing at Officer Hurst, who returned fire. Officer Hurst was fatally struck once in the chest by a bullet fired from the subject's gun.

4. At least one of the rounds fired by Officer Hurst struck the subject. Surveillance video revealed that the subject received some type of wound, most likely to the upper body or extremities, because the subject appears to flinch to his left while firing at Officer Hurst at the teller counter. The subject also appears to be holding or favoring his left side as he ran from the bank. Blood from the subject was recovered inside the bank as well as on the sidewalks and parking lots the subject ran through during his escape.

5. Witnesses to the robbery described the subject as a black male, approximately 5'5" and weighing around 150 pounds. Surveillance photos confirm that the subject was short and not much taller than the teller counter, was wearing a mask and gloves. One witness, who is 5'7", stated the subject was next to her at one point during the robbery and she described him as being shorter than her.

6. On January 7, 2004, a tipster contacted the Columbus Police Department with information regarding this robbery/homicide. The tipster stated she/he had a conversation with a female named MALENE KAMBON who lives in Baltimore, Maryland. MALENE stated her younger sister, MAKIA KAMBON, who is a student at Howard University located in Washington, D.C., received a phone call from DARYL LAWRENCE, who told her that he had been shot in Columbus and needed a place to stay as well as medical attention. MAKIA helped LAWRENCE find a hospital but because he had been shot, both MAKIA and LAWRENCE had

been questioned by DC Police. LAWRENCE lied about his identity and stated he was SHAWN JONES from California. MALENE later traveled to DC and visited LAWRENCE at the hospital.

7. Affiant contacted the Washington Field Office of the FBI and provided them with the above information. An alert was then sent out to all area DC hospitals regarding the information and at approximately 12:30 a.m. on January 8, 2005, affiant spoke with Lt. McClinton of the Howard University Campus Police. Lt. McClinton stated a black male using the name SHAWN JONES appeared at the Emergency Department of Howard University Hospital on January 7, 2005 at approximately 5:55 a.m.. JONES had a gun shot wound to the left hand, fingers and left arm. When JONES arrived at the ER, his injuries were already bandaged. JONES was admitted and received medical attention, including surgery. JONES lost part of his fingers and bullet fragments were removed from his skin.

8. Lt. McClinton spoke to JONES who provided him with his name, date of birth and social security number. JONES also said he was from California but lived in Atlanta, Georgia. JONES could not recall where he lived in Georgia. Lt. McClinton ran JONES' information through various law enforcement databases and was unable to confirm his identity.

9. Both Lt. McClinton and Det. Gonzalez, DC Metropolitan Police Department (MPD) interviewed JONES regarding the shooting. JONES stated he was in DC visiting a friend, MAKIA KAMBON. He arrived in DC on January 5, 2005 sometime between 4 and 5 p.m... On January 7, 2005 at approximately 1:00 a.m., JONES was walking around DC looking for a bar. Two unknown assailants approached him, robbed him at gunpoint, then shot him. He later passed out on the sidewalk and when he came to, MAKIA was there with a friend. JONES refused medical treatment, but then allowed the girls to bandage him up. JONES eventually went to the ER after he smoked a "blunt" to ease the pain. JONES had no explanation why it took him almost 5 hours to seek medical attention after the shooting.

10. Det. Gonzalez located and interviewed MAKIA. MAKIA initially stated JONES came to visit her but she did not allow him to stay with her. She found out JONES had been shot after she got worried that she had not seen him since the night before and decided to call the ER. MAKIA then changed her story, stating someone named DARYL from Ohio called her and said he needed to go to the hospital. MAKIA directed DARYL to George Washington Hospital. Sometime later, an unknown female called her and said she needed to go to Howard University Hospital and check on DARYL, who was using the alias of SHAWN JONES. The female also said that if anyone asks, she should say that she was with DARYL, aka, SHAWN JONES up until 10:00p.m.

11. Det. Gonzalez determined that since MAKIA and JONES did not provide consistent information regarding the robbery and shooting in DC, he classified these crimes as suspicious and most likely false.

12. Lt. McClinton observed JONES throughout the course of the interview. He noted that JONES was 5'5" and weighed approximately 150 pounds. Because JONES' story did not make sense and because none of his personal information could be verified, he began to question JONES and MAKIA more intently. While checking out some of the information, JONES walked out of the hospital on January 7, 2005 at approximately 7:00p.m.. He walked out with an IV attached to his arm, wearing a hospital gown and without shoes. He was last seen in the company of a black female MALENE KAMBON.

13. Investigation conducted by the affiant regarding DARYL LAWRENCE revealed he is a resident of Columbus, Ohio and graduate of Bishop Hartley High School. It should be noted that the tipster and MALENE KAMBON also graduated from Hartley and all three at one time were classmates. LAWRENCE is a black male, 5'5", 155 pounds, 29 years of age. LAWRENCE's photograph was sent to Lt. McClinton and was positively identified as being SHAWN JONES.

14. On January 8, 2005, the tipster recontacted the affiant and stated she had another conversation with MALENE KAMBON. MALENE stated she had heard about the police shooting in Columbus and went to a web site to observe the bank surveillance photos. It was both MALENE's and the tipster's opinion that the person depicted in the photos had the same height/weight as LAWRENCE. As a result, after hearing that LAWRENCE was in DC in a hospital, MALENE traveled to DC and sought out LAWRENCE. Upon entered the hospital, MALENE "ran into" LAWRENCE who was walking out. LAWRENCE asked for help, and had MALENE drive him to an unknown address in DC where she dropped him off. Waiting for him at this location was LAWRENCE's girlfriend from Columbus. The girlfriend was very upset with LAWRENCE and advised that she was the one who originally drove him to DC from Columbus. She was upset because he had gotten her involved with this mess and at one point almost abandoned him in Maryland. MALENE learned that after LAWRENCE was shot in Columbus, his brother helped him out by taking him to his girlfriend's house. The girlfriend reluctantly agreed to take him to DC to seek medical care. MALENE confronted LAWRENCE regarding the robbery/homicide. LAWRENCE stated he couldn't go to a hospital in Columbus because he had warrants. He also denied being involved with the robbery/homicide.

15. MALENE told the tipster that she thought she had done something wrong and felt bad that she helped LAWRENCE leave the hospital. In addition, MALENE said she thought LAWRENCE committed the robbery/homicide based upon her interaction with him after helping him leave the hospital.

16. It should be noted that LAWRENCE has no known warrants. His current whereabouts are unknown.

17. Affiant believes there is sufficient probable cause to believe DARYL LAWRENCE attempted to rob Fifth Third Bank, 6265 East Broad Street, Columbus, Ohio, on January 6, 2005, and used a firearm during the commission of that attempted robbery, in violation of 18U.S.C.1951 and 924(c).

Affiant Sayeth Further Naught

_____
Kevin R. Horan
Special Agent, FBI

Sworn to me and subscribed in my presence this 8th day of January, 2005

_____
United States Magistrate Judge