IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case Number 2:05-CR-00011 |
| | ) | |
| | ) | JUDGE GREGORY L. FROST |
| DARYL LAWRENCE | ) | |
| Defendant | ) | |

## MOVANT DARYL LAWRENCE'S MOTION FOR EXCULPATORY AND IMPEACHMENT INFORMATION AND INCORPORATED MEMORANDUM

Comes now Daryl Lawrence, through undersigned counsel, and pursuant to the Fourth, Fifth, Sixth and Eighth Amendments to the United States Constitution respectfully moves this Honorable Court to order disclosure of exculpatory and impeachment information from the Government pursuant to its continuing obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). The requested information is essential to guarantee Mr. Lawrence a full and fair opportunity to raise any and all cognizable claims under 28 U.S.C. § 2255 concerning his conviction and/or sentence. The grounds for this request are set forth in the following memorandum.

Respectfully submitted,

/s/ Miriam Gohara
Miriam Gohara (NY2903243)
Federal Capital Habeas Project
Federal Public Defender
265 Church St., Suite 702
New Haven, CT 06510
301.344.2337 (phone)
301.344.0019 (fax)
E-mail: Miriam_Gohara@fd.org

## MEMORANDUM

Mr. Lawrence seeks disclosure of Government records, described in detail below, pursuant to obligations imposed by both constitutional doctrine and the Department of Justice's own ethical guidelines for its prosecutors, which underscore that obligation and detail its practical application.

### I.    The Government's Disclosure Obligations

As the Court and the Government are aware, disclosure of exculpatory and impeachment information is part of the constitutional guarantee to a fair trial. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 154 (1972). The law requires the disclosure of such information when it is "material"[1] to guilt or punishment. *Brady*, 373 U.S. at 87; *Giglio*, 405 U.S. at 154. Because *Brady* and *Giglio* impose constitutional obligations on the prosecution, *Brady* and *Giglio* material must be disclosed regardless of whether the defendant makes an explicit request for exculpatory or impeachment evidence. *Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995); *United States v. Bagley*, 473 U.S. 667, 682 (1985).

Recognizing that it is sometimes difficult to assess the materiality of evidence, the Supreme Court has counseled that prosecutors should err on the side of disclosure. *Kyles*, 514 U.S. at 439. *See also United States v. Agurs*, 427 U.S. 97, 108 (1976) ("The prudent prosecutor

---

[1] Exculpatory and impeachment information is "material" if there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). To satisfy the "reasonable probability standard," there must be "a probability sufficient to undermine confidence in the outcome." *Id*. A defendant need not show that an acquittal would have necessarily resulted with the disclosure of the withheld evidence. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). Significantly, the materiality of the suppressed evidence must be considered collectively, rather than item by item. *Id*. at 435-36 ("One does not show a *Brady* violation by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.").

2

will resolve doubtful questions in favor of disclosure."). Accordingly, the Government has an affirmative duty to search for, learn of, and disclose exculpatory and impeachment information in the possession of the members of the prosecution team, which includes federal, state, and local law enforcement officers and other government officials participating in the investigation and prosecution of the criminal case against the defendant. *Kyles*, 514 U.S. at 437-38.[2] Moreover, "the duty to disclose is ongoing." *Pennsylvania v. Ritchie*, 480 U.S. 39, 60 (1987).

Consistent with the constitutional obligations outlined above, in 2006, the Department of Justice amended the United States Attorney's Manual ("USAM") regarding *Brady*/*Giglio* obligations by requiring prosecutors to "take a broad view of materiality and err on the side of disclosing exculpatory and impeaching evidence." USAM § 9-5.001 (B)(1).[3] However, responding to several high profile cases involving *Brady* violations and related prosecutorial misconduct where courts sanctioned prosecutors and/or dismissed cases altogether,[4] the Department of Justice issued three memos on January 4, 2010, through then-Deputy Attorney General David Ogden (the "Ogden memos"). The Ogden memos included "Guidance for Prosecutors Regarding Criminal Discovery" ("Guidance Memo") and related training initiatives that outlined "a methodical approach to consideration of discovery obligations that prosecutors

---

[2] *See also Barbee v. Warden*, 331 F.2d 842, 846 (4th Cir. 1964) ("[T]he police are also part of the prosecution, and … the taint on the trial is no less if they, rather than the State's attorney, were guilty of nondisclosure.").

[3] Available online at: http://www.justice.gov/usam/usam-9-5000-issues-related-trials-and-other-court-proceedings (last visited 10/15/15).

[4] *See*, *e.g*., Special Counsel Report to Hon. Emmet G. Sullivan of Investigation Conducted Pursuant to Court's Order, April 7, 2009 (documenting Government's failure to comply with *Brady* and *Giglio* obligations in prosecution of Senator Ted Stevens) (available online at https://s3.amazonaws.com/s3.documentcloud.org/documents/325801/court-report-on-stevens-ethics-case.pdf (last visited 10/16/15)).

should follow in every case to avoid lapses that can result in consequences adverse to the Department's pursuit of Justice." Guidance Memo at 1.[5] Concurrent with issuance of the Guidance Memo, the Deputy Attorney General directed all United States Attorney's Offices to develop a discovery policy with which prosecutors in each respective office must comply, and that reflects circuit and district court precedent and local rules and practices.

On October 15, 2010, the United States Attorney's Office for the Southern District of Ohio announced its new criminal discovery policy in a memorandum ("*Brady* Memo") issued pursuant to the Deputy Attorney General's directive. The *Brady* Memo adopts the Guidance Memo as the District's new criminal discovery policy and notes that all prosecutors in the District "must comply" with this policy. *Brady* Memo at 2-3.[6] The *Brady* Memo instructs that prosecutors conduct a thorough review process for all potentially discoverable material within the custody or control of the prosecution team. Among the many areas on which the *Brady* Memo instructs prosecutors to focus are the following, which are relevant to Mr. Lawrence's case:

    1.    <u>The investigative agency's file</u>. The Memo notes that prosecutors should be granted access to the substantive case file or any other document the prosecutor has reason to believe may contain discoverable information, and that the prosecutor can personally review the file or may choose to request production of potentially discoverable

---

[5] Available online at: http://www.justice.gov/dag/memorandum-department-prosecutors (last visited 10/15/15). A paginated version is available at: http://www.justice.gov/sites/default/files/usao/pages/attachments/2015/04/01/ohs_discovery_policy.pdf (last visited 10/15/15).

[6] Available online at: http://www.justice.gov/sites/default/files/usao/pages/attachments/2015/04/01/ohs_discovery_policy.pdf (last visited 10/15/15).

materials from the case agents. Moreover, the Memo instructs that the investigative agency's entire investigation file, including documents such as FBI Electronic Communications (ECs) inserts, emails, etc., should be reviewed for discoverable information.  The Memo also advises that prosecutors should discuss with the investigative agency whether files from other investigations or non-investigative files such as confidential source files might contain discoverable information. Guidance Memo at 4.

2.      Evidence and information gathered during the investigation. The Memo notes that all evidence and information gathered during the investigation should be reviewed, and that in cases involving a large volume of potentially discoverable information, prosecutors may discharge their disclosure obligation by choosing to make the voluminous information available to the defense. Guidance Memo at 5.

3.      Substantive case-related communications. As the Memo notes, "substantive" communications include "factual reports about investigative activity, factual discussions of the relative merits of evidence, factual information obtained during interviews or interactions with witnesses/victims, and factual issues relating to credibility." Guidance Memo at 6. Such communications may be memorialized in emails, memoranda or notes, but as the memo states clearly, "the format of the information does not determine whether it is discoverable. For example, material exculpatory information that the prosecutor receives during a conversation with an agent or witness is no less discoverable than if that same information were contained in an email." Guidance Memo at 6.

4.      Information obtained in witness interviews. The Memo provides three examples of information obtained in witness interviews:

a.      Witness statement variations. The Memo notes that some witnesses' statements will vary during the course of an interview or investigation, and that "[m]aterial variances in a witness's statements should be memorialized, even if they are within the same interview, and they should be provided to the defense as *Giglio* information." Guidance Memo at 8.

b.      Trial preparation meetings with witnesses. The Memo states that "prosecutors should be particularly attuned to new or inconsistent information disclosed by the witness during a pre-trial witness preparation session." Guidance Memo at 8. The Memo further instructs that new information that is exculpatory or impeachment should be disclosed even if the information is first disclosed in a witness preparation session.

c.      Agent notes. The Memo states that agent notes "should be reviewed if there is a reason to believe that the notes are materially different from the memorandum, if a written memorandum was not prepared, if the precise words used by the witness are significant, or if the witness disputes the agent's account of the interview." Guidance Memo at 8.

5.      Potential *Giglio* information relating to non-law enforcement witnesses and Fed. R. Evid. 806 declarants. The Memo directs that all potential *Giglio* information known by or in possession of the prosecution team relating to non-law enforcement witnesses should be gathered and reviewed, and that such information includes, but is not limited to:

> • Prior inconsistent statements, including inconsistent attorney proffers;

6

- Statements or reports reflecting witness statement variations, including statements made during trial preparation meetings with witnesses;
- Benefits provided to witnesses, including:
  -Dropped or reduced charges;
  -Immunity;
  -Expectations of downward departures or motions for reductions of sentence;
  -Assistance in a federal, state, or local criminal proceeding;
  -Considerations regarding forfeiture of assets;
  -Stays of deportation or other immigration status considerations;
  -S-Visas;
  -Monetary benefits;
  -Non-prosecution agreements;
  -Letters to other law enforcement officials (e.g., state prosecutors, parole boards) setting forth the extent of a witness's assistance or making substantive recommendations on the witness's behalf;
  -Relocation assistance;
  -Consideration or benefits to culpable or at risk third-parties
- Other known conditions that could affect the witness's bias such as:
  -Animosity toward defendant;
  -Animosity toward a group of which defendant is a member or with which he is affiliated;
  -Relationship with the victim;
  -Known but uncharged criminal conduct (that may provide an incentive to curry favor with a prosecutor);
- Prior acts under Fed. R. Evid. 608;
- Prior convictions under Fed. R. Evid. 609;
- Known substance abuse or mental health issues or other issues that could affect the witness's ability to perceive and recall events.

Guidance Memo at 6-7.

6.    Potential *Giglio* information relating to law enforcement witnesses. The Memo

states that prosecutors "should have candid conversations with the federal agents

with whom they work regarding any potential *Giglio* issues" and "should be

familiar with circuit and district court precedent and local practice regarding

obtaining *Giglio* information from state and local law enforcement officers."

Guidance Memo at 6.

The Guidance Memo also notes that in cases arising out of investigations conducted by multi-agency task forces or otherwise involving state law enforcement agencies, prosecutors "are encouraged to err on the side of inclusiveness when identifying the members of the prosecution team for discovery purposes." Guidance Memo at 3.

## II.      Request for Exculpatory and Impeachment Information

Consistent with Government's continuing constitutional obligation to disclose exculpatory and impeachment information, the undersigned respectfully requests that the Government conduct a review of the entire law enforcement file, including that of any federal, state, or local agency that participated in the investigation and prosecution of Daryl Lawrence, and disclose the following exculpatory and impeachment information:

1.      Any information that is inconsistent with any element of any crime of which Mr. Lawrence was convicted, including but not limited to mens rea.

2.      Any information that establishes a recognized affirmative defense to any crime of which Mr. Lawrence was convicted, including but not limited to insanity.

3.      Any information that tends to cast doubt upon the accuracy of any evidence upon which the Government relied at trial to prove any element of any crime charged.

4.      Any information that tends to cast doubt upon the accuracy of any evidence upon which the Government relied at trial to prove any statutory intent factor under 18 U.S.C. § 3591(a)(2)(A)-(D).

5.      Any information that tends to cast doubt upon the accuracy of any evidence upon which the Government relied at trial to prove any statutory or non-statutory aggravating factors.

6.      Any information that tends to cast doubt upon the accuracy of any evidence upon which the Government relied at trial to rebut any statutory or non-statutory mitigating factors.

7.      Any information that tends to establish a statutory or non-statutory mitigating factor, including but not limited to any of the mitigating factors actually presented by the defense at trial.

8.      Any information that would tend to prove or reveal a bias or motive of any Government witness who testified at the trial or before the Grand Jury.

9. Any information of any arrests, pending cases, and criminal convictions in this or any jurisdiction (state or federal) of any witness whom the Government called at trial or before the Grand Jury.

10. Any information of any suspected wrongdoing or ongoing investigations in this or any other jurisdiction (state or federal) of any witness whom the Government called at trial or before the Grand Jury.

11. Any potential *Giglio* information relating to non-law enforcement trial and/or Grand Jury witnesses and Fed. R. Evid. 806 declarants, including but not limited to:

   (a) Prior inconsistent statements, including inconsistent attorney proffers;

   (b) Statements or reports reflecting witness statement variations, including statements made during trial preparation meetings with witnesses;

   (c) Benefits provided to witnesses, including:
      (1) Dropped or reduced charges;
      (2) Immunity;
      (3) Expectations of downward departures or motions for reductions of sentence;
      (4) Assistance in a federal, state, or local criminal proceeding;
      (5) Considerations regarding forfeiture of assets;
      (6) Stays of deportation or other immigration status considerations;
      (7) S-Visas;
      (8) Monetary benefits;
      (9) Non-prosecution agreements;
      (10) Letters to other law enforcement officials (e.g., state prosecutors, parole boards) setting forth the extent of a witness's assistance or making substantive recommendations on the witness's behalf;
      (11) Relocation assistance;
      (12) Consideration or benefits to culpable or at risk third-parties

   (d) Other known conditions that could affect the witness's bias such as:
      (1) Animosity toward Mr. Lawrence;
      (2) Animosity toward a group of which Mr. Lawrence is a member or with which he is affiliated;
      (3) Relationship with the victim;
      (4) Known but uncharged criminal conduct (that may provide an incentive to curry favor with a prosecutor)

   (e) Prior acts under Fed. R. Evid. 608;

   (f) Prior convictions under Fed. R. Evid. 609;

(g)     Known substance abuse or mental health issues or other issues that could affect the witness's ability to perceive and recall events.

12.     Any and all threats of prosecution or any statements regarding the magnitude of penal liability made to any witness that the Government called at trial, or any witness called before a federal grand jury, by any agent or employee of the Government or by any state law enforcement or prosecutorial agency working or cooperating with the Government.

13.     A full and complete statement of all promises, considerations, rewards, or inducements made by the Government, its prosecutors, agents or agencies to induce or encourage any individual's trial or grand jury testimony, cooperation or provision of information, wherein the Government has agreed, either with the individual, their counsel, agent or representative, to any of the following:

(a)     not to prosecute said person for any crime or crimes;

(b)     not to prosecute a third party for any crime or crimes where the reason for not prosecuting the third party is a consideration to the person;

(c)     to provide a formal grant of statutory immunity, or to provide an informal assurance that the person will not be prosecuted in connection with any testimony, cooperation, or information given;

(d)     to recommend leniency or a particular sentence for any crime or crimes for which the person stands convicted or is expected to be convicted;

(e)     to comply with any prior agreements although said witness may have previously violated a part of their agreement;

(f)     to recommend or not oppose a reduction of the offense level of the person under the United States Sentencing Guidelines for acceptance of responsibility;

(g)     to recommend to the sentencing authority under the United States Sentencing Guidelines a downward departure from the guidelines if that person provides substantial assistance to authorities;

(h)     to recommend or not oppose any downward departures or offense level reductions for the person under the United States Sentencing Guidelines;

(i)     to seal any plea or plea agreement of that person;

(j)     to provide favorable treatment or consideration, including but not limited to, money, expenses, subsistence, a job, a new location, a new start, etc. to the person

10

or to friends or relatives of the person in return for that person's testimony, cooperation, or provision of information;

(k)     to make any beneficial recommendation, regarding the person to any state or federal agency;

(l)     to cooperate with any state law enforcement agency and that agency's agreement not to prosecute said person for any crime or crimes prohibited by state law;

(m)     to make any other recommendation of benefit, or give any other consideration to the person or friends or relatives of said person;

(n)      to provide a statement to, or speak with, any law enforcement agency, prosecution official or court (state or federal) concerning the witness's assistance or cooperation.

14.     Any payments that were made to any witnesses, including but not limited to:

(a)     Karla Thacker
(b)     Matthew Tranquilli
(c)     Heidi Litten
(d)     David Polley
(e)     Wendy Sues
(f)     Matthew Ware
(g)     Lucas Hunter
(h)     Heather Clifton
(i)     Warren Cox
(j)     Andrea Ross
(k)     Amanda Goodman
(l)     Marian Large
(m)     Angie Karst
(n)     David Love
(o)     Michelle Johnson
(p)     Deborah Rader
(q)     Andrew Weber
(r)     William Snyder
(s)     Janel Mead
(t)     Ronald Waugh
(u)     Tamara Gunnell
(v)     Makia Kambon
(w)     Malene Kambon
(x)     Mark Hardy
(y)     Patrick Fardal
(z)     Lazaro Gonzalez
(aa)    Robert Schwinger

11

(bb)     Angela McCravy
(cc)     Darrell Fitzpatrick
(dd)     Mark Henson
(ee)     James McCoskey
(ff)     Nate Jones
(gg)     Sara Debolt
(hh)     Pamela Rhodeback
(ii)     Carolyn Kaczorowski
(jj)     Thaddeus Kaczorowski
(kk)     Stacey Kaczorowski
(ll)     Gregory Kaczorowski
(mm)     Michael Plaugher
(nn)     Sherry Marzick
(oo)     Donald Oliverio
(pp)     Marissa Hurst
(rr)     Erica Arnold
(ss)     Heather Kinney
(tt)     Julie Mitchell
(uu)     Christina Erick

15.     Any potential *Giglio* information relating to law enforcement trial and/or grand jury witnesses.

16.     Any exculpatory or impeachment information obtained from witnesses who testified at the trial and/or Grand Jury.

17.     Any exculpatory or impeachment information obtained from non-testifying witnesses.

18.     Any exculpatory or impeachment information obtained from any confidential informant, confidential witness, confidential human source and/or confidential source.

19.     Any exculpatory or impeachment information contained in case-related communications that occurred: (a) among prosecutors and/or federal, state, or local agents/officers; (b) between prosecutors and/or federal, state, or local agents/officers and witnesses and/or victims; and/or (c) between victim-witness coordinators and witnesses and/or victims, including but not limited to:

    (a)     communications concerning the reasons a witness would not be called to testify at the trial;
    (b)     communications concerning any discussion not to conduct further interviews with any witnesses.

20.     Any exculpatory or impeachment information concerning any forensic tests, examinations, evaluations, reports, and/or conclusions drawn from them that were presented at trial, including but not limited to any information that tends to show that the

12

testing procedures and analysis used in this case have ever been performed inadequately or imperfectly in any other case.

21.     Any exculpatory or impeachment information concerning decisions made by the prosecution and/or federal, state, or local agents/officers not to conduct particular forensic tests, examinations, or evaluations, including but not limited to the decision not to conduct further forensic/chemical testing of the shirt worn by Officer Bryan Hurst to determine whether a shot was fired at close range (e.g., modified Greiss test for latent nitrate residues, or sodium rhodizonate test for lead residue).

22.     Any exculpatory or impeachment information contained in case-related communications occurring among prosecutors and/or federal, state, or local agents concerning a computer-generated recreation of the January 6, 2005, homicide at Fifth Third Bank.

23.     Any exculpatory or impeachment information contained in case-related communications occurring among members of the prosecution team who created the computer-generated recreation of the January 6, 2005, homicide at Fifth Third Bank.

24.     Any exculpatory or impeachment information obtained from third parties, including but not limited to:

(a)     information gathered by Fifth Third Bank as part of its internal investigation into the January 6, 2005, attempted bank robbery and homicide at Fifth Third Bank;
(b)     information gathered by Fifth Third Bank as part of its internal investigation into the January 21, 2004, bank robbery at Fifth Third Bank;
(c)     information gathered by Sky Bank as part of its internal investigation into the September 8, 2004, bank robbery at Sky Bank;
(d)     information gathered by Key Bank as part of its internal investigation into the August 12, 2004, bank robbery at Key Bank.

25.     Any exculpatory or impeachment information known to any federal, state, or local agency that assisted in the investigation and/or prosecution of Daryl Lawrence.

## CONCLUSION

WHEREFORE, Daryl Lawrence respectfully requests that this Honorable Court grant the

foregoing Motion and order the Government to disclose any and all exculpatory and

impeachment information related to the investigation and prosecution of Daryl Lawrence in this

case.

Respectfully submitted,

/s/ Miriam Gohara
Miriam Gohara (NY2903243)
Federal Capital Habeas Project
Federal Public Defender
265 Church St., Suite 702
New Haven, CT 06510
301.344.2337 (phone)
301.344.0019 (fax)
E-mail: Miriam_Gohara@fd.org

14

## *CERTIFICATE OF SERVICE*

I hereby certify that an exact copy of the foregoing was sent on November 2, 2015 through the Court's ECF system to:

David DeVillers, Esq.
Michael John Burns, Esq.
United States Attorney's Office
303 Marconi Blvd, Suite 200
Columbus, Ohio 43215
Email: dave.devillers@usdoj.gov
Email: michael.burns@usdoj.gov

/s/ Miriam Gohara
Miriam Gohara (NY2903243)
Federal Capital Habeas Project
Federal Public Defender, District of
        Maryland CT Office
265 Church St., Suite 702
New Haven, CT 06510
301.344.2337 (phone)
301.344.0019 (fax)
E-mail: Miriam_Gohara@fd.org

15