Exhibit 63:

Franklin County Adult Probation Records Excerpt

## Franklin County Adult Probation Department Progress Notes Summary

| | |
|---|---|
| **Client Name** | Lawrence, DarylMartez |
| **PDNO** | 67952 |
| **Probation Officer** | Eric Pinson |
| **Comments or other information** | |

**Notes**

7/9/2002 4:11:05 PM   OV
D reported for OV. asked about agencies that help felons find work. discussed Community Connection program. D said he would be interested and willing to complete the program. filled out the referral form and faxed to Comm connection. D seems eager to find work, but has had no luck.  appt is 7/16/02 at 8:45am.
no changes to report. D needs to find a job and start making payments toward his costs. EP

6/18/2002 12:44:25 PM   TCF  Source: Defendant
D called to say he rec'd the notification that he missed his OV. told D he would be put down as FTR and he needs to come in July 9.  told D to make a payment by the end of the month. EP

6/13/2002 2:27:03 PM   FTR
D failed to report. notice sent. EP

5/16/2002 2:51:51 PM   OV
D reported late, with permission.  D will make a payment next Monday.  Only working 10-15 hours per month At Nationwide arena due to the Hockey season ending.  D is trying to get a job at Rhodes Warehouse.  No other changes to report. EP

4/10/2002 3:47:18 PM   OV
Defendant has started working at Nationwide Arena, will verify next month after first paycheck.  Ordered to make a payment next month, has not been able to get hired due too record, I know he was trying.

3/13/2002 5:18:00 PM   OV
Defendant stated he is working at Nationwide arena, will verify next month, will make a payment next friday.

3/6/2002 8:52:46 AM   FV
Defenmdant was not home but I spoke with his sister who stated that he was looking for a job.

2/13/2002 10:48:30 AM   OV
Defendant didn't get the job at famous Footwear last month and he is still unemployed. No payment, said he is flat broke. Stated he is looking for employment.

1/16/2002 10:06:51 AM   OV
Defendant starts a job at Famous Footwear at Easton on Tuesday, stated he will make a $200.00 payment by next week.

12/12/2001 12:03:12 PM   OV
Defendant still unemployed but looking, still no payment, given new calendar, ordered to seek employment asap.

11/21/2001 1:30:22 PM   FTR
Defendant failed to report or call this month, delinquency notice sent.

10/9/2001   OV

**PC11635**

Defendant lost his job for missing to many days, stated he will make a payment later in the week.

9/4/2001   INST
Defendant was instructed on conditions of supervision, agrees to pay $50.00 a month.  Verified employment.
defendant thinks that he is only on probation for one year and not two.  He will talk to his attorney.

PC11636

| | |
|---|---|
| Name | DARYL MARTEZ LAWRENCE |
| Date | 09/04/2001 |
| Note: | Defendant was instructed on conditions of supervision, agrees to pay $50.00 a month. Verified employment. defendant thinks that he is only on probation for one year and not two. He will talk to his attorney. |

**PC13434**

| Name | DARYL MARTEZ LAWRENCE |
| --- | --- |
| Date | 10/09/2001 |
| Note: | Defendant lost his job for missing to many days, stated he will make a payment later in the week. |

**PC13435**

| Name | Daryl Martez Lawrence |
|------|----------------------|
| Date | 11/21/2001 01:30:22 PM |
| Note: | Defendant failed to report or call this month, delinquency notice sent. |

PC13436

| Name | Daryl Martez Lawrence |
|------|----------------------|
| Date | 12/12/2001 12:03:12 PM |
| Note: | Defendant still unemployed but looking, still no payment, given new calendar, ordered to seek employment asap. |

PC13437

| | |
|---|---|
| Name | Daryl Martez Lawrence |
| Date | 01/16/2002 10:06:51 AM |
| Note: | Defendant starts a job at Famous Footwear at Easton on Tuesday, stated he will make a $200.00 payment by next week. |

**PC13438**

| | |
|---|---|
| Name | Daryl Martez Lawrence |
| Date | 02/13/2002 10:48:30 AM |
| Note: | Defendant didn't get the job at famous Footwear last month and he is still unemployed. No payment, said he is flat broke.  Stated he is looking for employment. |

**PC13439**

| | |
|---|---|
| Name | Daryl Martez Lawrence |
| Date | 03/06/2002 08:52:46 AM |
| Note: | Defenmdant was not home but I spoke with his sister who stated that he was looking for a job. |

**PC13440**

| Name | Daryl Martez Lawrence |
|---|---|
| Date | 03/13/2002 05:18:00 PM |
| Note: | Defendant stated he is working at Nationwide arena, will verify next month, will make a payment next friday. |

**PC13441**

| | |
|---|---|
| Name | Daryl Martez Lawrence |
| Date | 04/10/2002 03:47:18 PM |
| Note: | Defendant has started working at Nationwide Arena, will verify next month after first paycheck.  Ordered to make a payment next month, has not been able to get hired due too record, I know he was trying. |

**PC13442**

# Exhibit 64:
# 01-20-06 Govt. Witness List

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA

        v.

DARYL LAWRENCE

:
:     NO. CR-2-05-011
:     JUDGE FROST
:

## GOVERNMENT WITNESS LIST

1     Ms. Carla May
       524 Nichols Square
       Circleville, OH  43113

2     Ms. Laura R. Ducker
       12113 Milnor Road
       Pickerington, OH  43147

3     Mr. Matt Tranquili

4     Detective Don Junk, #1541
       Columbus Police Department
       120 Marconi Boulevard
       Columbus, OH

5     Ms. Julie M. Vore
       9124 Longstone Drive
       Lewis Center, OH  43035

6     Mr. Brian Burstein
       7479 Windsor Drive
       Dublin, OH  43016

7     Detective King, #462
       Westerville Police Department

8     Detective Ware, #491
       Westerville Police Department

TC40451

9       Detective    Smith, #465
Westerville Police Department

10     Detective    Moore, #474
Westerville Police Department

11     Ms. Wendy   Sues
878 Sheldrate Court
Columbus, OH

12     Mr. David L. Polley
7497 Totten Spring Drive
Genoa, OH

13     Heiai   Litten
16755 Springelate Road
Marysville, OH

14     Santha   Nagabhyru
6581 Millridge Circle
Columbus, Ohio

15     Ms. Patricia   Vanhoose
60 Barleycorn Drive
Columbus, Ohio

16     Mr. Lucas   Hunter
314 Eddington Drive
Pataskala, OH   43026

17     Ms. Julie   Cain
415 West William Street
Delaware, OH

18     Ms. Kristine   Earick
3721 Emery Club Way
Columbus, OH   43219

19     Detective Janel   Mead, #1172
Columbus Police Department
120 Marconi Boulevard
Columbus, OH   43215

TC40452

20    Officer David   Love
      Reynoldsburg Police Department

21    Detective Vince  Houpe, #1195
      Columbus Police Department
      120 Marconi Boulevard
      Columbus, OH   43215

22    Lieutenant   Weber, #56, Truro Medic #161

23    Ms. Marian  Large
      320 Broken Arrow Drive
      Gahanna, OH

24    Ms. Angie  Karst
      189 French Run Lane
      Reynoldsburg, OH

25    Ms. Heather M. Clifton
      5985 Westbend Drive
      Galloway, OH

26    Mr. Brian  Pickerson
      100 Village Gate Boulevard, Apt108
      Reynoldsburg, OH

27    Ms. Andrea  Ross
      5116 Dalmeny Court
      Columbus, OH   43220

28    Ms. Amanda B. Goodman
      139 Winesap Street
      Pataskla, OH   43062

29    Mr. John A. Brown, #1910
      Columbus Police Department

30    Officer D.  Fitzpatrick, #1227
      Columbus Police Department

31    Officer Nicole  Pryseck, #28
      Columbus Police Department

**TC40453**

32    Mr. Warren  Cox, II
2927 Morelane Drive
Worthington, OH  43085

33    Ms. Deborah K. Rader
233 Harrison Street
Summit Station, OH  43073

34    Mr. Robert  A. Schwinger
Federal Bureau of Intelligence

35    Ms. Heather  Butters
Federal Bureau of Intelligence

36    Ms. Makia Nailah Kambon
Howard Towers Plaza West    *Diane + Malene*
2251 Sherman Avenue, #601A
Washington, DC  20001

37    Detective William  Xanten
DC Metropolitan Police

38    Detective  Lazaro   Gonzalez
DC Metropolitan Police

39    Ms. Tamara  Gunnell    *Kurt*
913 East 21st Avenue
Columbus, OH

40    Ms. Consello  Logan    *Diane*
5596 Gatling Drive
Canal Winchester, OH

41    Ms Conchita (Lisa)  Barnett    *Diane*
3122 Scottwood Road
Columbus, Ohio

42    Mr. Ricky  Lopez    *Diane*
36 Winner Avenue
Columbus, OH

**TC40454**

43    Mr. Nathaniel  Jones, III
      1265 Seymour Avenue
      Columbus, OH

      *Diane*

44    Ms. Renee A. Anderson
      1812 Creeksedge Drive
      Columbus, OH   43204

      *Diane*

45    Ms. Natalie  Liggins
      3015 Fleed Road
      Columbus, OH   43232

      *Diane*

46    Ms. Sara  Debolt
      3807 Springhouse Lane
      Columbus, OH   43229

      *Diane*

47    Ms. Tamara   Valentine

      *Diane*          *→ Tamara willis?*

48    Ms. Hope  Brinning
      3787 Esquire Drive
      Canal Winchester, OH   43110   *Diane*

49    Mr. William B. Stoner, Jr.
      1074 Cannonade Court
      Gahanna, OH   43230

50    Mr. Matt  Smithy
      1560 Harrisburg Pike
      Columbus, Ohio

51    Mr. Clyde   Schulz, #1056
      Columbus Police Department
      120 Marconi Boulevard
      Columbus, OH   43215

52    Detective William  Snyder, #979
      Columbus Police Department
      120 Marconi Boulevard
      Columbus, OH   43215

TC40455

53  Detective Mark  Henson, #1170
Columbus Police Department
120 Marconi Boulevard
Columbus, OH  43215

54  Detective Tom  Severs
Columbus Police Department
120 Marconi Boulevard
Columbus, OH  43215

55  Detective C.  Bisutti
Columbus Police Department
120 Marconi Boulevard
Columbus, OH  43215

56  Detective Mark  Green, #1189
Columbus Police Department
120 Marconi Boulevard
Columbus, OH  43215

57  Detective R. Waugh
Columbus Police Department
120 Marconi Boulevard
Columbus, OH  43215

58  Dr. Patrick M. Fardal     *Coroner / name*

59  Detective B.  Carney, #1561
Columbus Police Department
120 Marconi Boulevard
Columbus, OH  43215

60  Mr. Eric A. Carpenter
Federal Bureau of Intelligence

61  Mr. Brendon F. Shen
Federal Bureau of Intelligence

62  Mr.  Mark  Hardy
Columbus Police Department
Crime Lab       *name*
520 King Avenue
Columbus, OH  43201

TC40456

63    Ms. Debra L. Lambourne
Columbus Police Department
Crime Lab
520 King Avenue
Columbus, OH 43201

64    Ms. Ericka P. Stone
BCI&I Office
London, OH

Respectfully submitted,

GREGORY G. LOCKHART
United States Attorney

s/David M. DeVillers
DAVID M. DEVILLERS (0059456)
Assistant United States Attorney

s/Michael J. Burns
MICHAEL J. BURNS (0023446)
Assistant United States Attorney

**TC40457**

# Exhibit 65:

# Cunningham PP Slide on Violent Victimization

# Violent Victimization

1. **Michael Smith** (13-14) – peer age friend since 4th grade decapitated in car wreck while fleeing from the police.
2. **Ms. Bell** – stabbed to death by son, Johnny Bell, in 1989 just before 8th grade graduation.
3. **Nikki McGee** (17) – former girlfriend was abducted, tortured, raped, and murdered in 1991.
4. **Jennifer Wylitch** (18) – good friend and high school classmate killed by drunk driver.
5. **Julius "Bon-Ton" Washington** (35) – drug dealer shot-gunned to death by brother in attempted armed robbery.
6. **Mike Whispers** (25) – history of fights and shootouts at parties, assailant drove up and shot him in the head with an AK-47 in 1995.
7. **"Genghis"** (40) – shot to death by his good friend, Jermaine Jefferies, in drug robbery of 20 kilos of cocaine.
8. **Brian "Fat-Cat" Jones** (37-38) – drug wholesaler shot to death in 1997-98 his attempted robbery of a regular customer, Mickey Smith.
9. **Rashard Smith** (32) – shot to death by Stacey Barick.
10. **Stacey Barick** (33-34) – shot to death in 2001 in retaliation for killing Rashard Smith (32).
11. **Melvin Hodges** (35) – drug dealer shot to death in 2003 in home invasion armed robbery at his residence.
12. **Michael Dalton** (34) – stabbed to death by cousin in 2003 after Michael confronted him about stealing his jewelry.
13. **Shawn McBroom** (29) – shot to death in 2004 outside a bar following a fight.
14. **Derrick Burgess** (34-35) – former drug dealer turned record producer shot to death in 2004 in home invasion armed robbery.
15. **Maylan Ransom** – maternal cousin paralyzed from being shot-gunned in the back.

# Exhibit 66:

# 09-26-05 FBI Animation Video Memo

(Rev. 01-31-2003)

# FEDERAL BUREAU OF INVESTIGATION

**Precedence:** ROUTINE                     **Date:** 09/26/2005

**To:** Cincinnati          **Attn:** Squad 6/Columbus RA
                                         Harry W. Trombitas  614-744-21

**From:** Laboratory
         Forensic Science Support Section, IPGU, Room #1170
         **Contact:** Carl K. Adrian  703-632-8206

**Approved By:** Berry Richard A RAB

**Drafted By:** Adrian Carl K:cka CKA

**Case ID #:** 91A-CI-74994-59(Pending)

**Title:** DARYL M. LAWRENCE;
         FIFTH THIRD BANK,
         6265 E. BROAD STREET,
         COLUMBUS, OHIO;
         1/06/2005;
         BANK ROBBERY - HOMICIDE

**Synopsis:** The Investigative and Prosecutive Graphic Unit (IPGU),
Laboratory Division (LD) prepared a digital three dimensional
reconstruction of the Fifth Third Bank in support of the above
captioned matter.

**Administrative:** Reference Electronic Communication (EC) dated
03/24/2005, from SA Harry Trombitas, Cincinnati Division (CI),
Columbus Resident Agency.

**Package Copy:** Included

**Enclosures:** Being forwarded under separate cover are the
following items: 4 sets of 10 8"x11" color prints;
                 5 CD's which contain the images and a AVI movie
                 file for review;
                 A copy of Mr. Adrian's notes;

**Details:** The IPGU received a EC from CI, dated 3/24/2005,
requesting the preparation of a to scale three dimensional
reconstruction of the Fifth Third Bank.  A IPGU visual
information Specialist traveled to the bank, conducted 3D laser
scans, secured measurements and prepared the requested
reconstruction.  Enclosed are copies of the completed
reconstruction diagrams.

**TC11891**

To:  Cincinnati  From:  Laboratory
Re:  91A-CI-74994, 09/26/2005

       S.A. Trombitas is directed to retain a set of the
enclosed prints and one CD for his file.  The balance of the
enclosures are to be forwarded to the United States Attorneys'
office for review.  Upon review of these images, please contact
Carl K. Adrian regarding any corrections and/or changes which may
need to be made.  If no corrections/modifications are required,
please contact Mr. Adrian so he can produce 30" x 40" prints of
each image to be used at trial.  The completed images are being
forwarded to the Cincinnati Division, Attn: SA Harry Trombitas.

2

**TC11892**

# Exhibit 67:

# 06-02-05 Letter from DM & KG to Lockhart (USA)

# DIANE M. MENASHE
## ATTORNEY AT LAW

536 SOUTH WALL STREET  SUITE 300
COLUMBUS, OHIO 43215

OFFICE: 614.221.6500
FAX: 614.224.9258

menashe@columbus.rr.com

June 2, 2005

Gregory Lockhart, Esq.
United States Attorney for
The Southern District of Ohio
United States Attorney's Office
602 Federal Building
200 West 2nd Street
Dayton, Ohio 45402

> Re:  **United States v. Daryl Lawrence**
>       **Case No. 2:05CR011**

Dear Mr. Lockhart:

We are counsel for Mr. Daryl Lawrence in United States v. Daryl Lawrence, Case No. 2:05CR011, currently pending before Judge Gregory Frost in the Southern District of Ohio, Eastern Division. The purpose of this letter is to request that you, in your capacity as United States Attorney for the Southern District of Ohio, not seek the death penalty in the above-referenced case. The reasons for this request are outlined below.

First, the circumstances surrounding the January 6, 2005 shooting of Officer Hurst warrant a punishment other than death. The incident between Mr. Lawrence and Officer Hurst on January 6, 2005 was incredibly quick; both our client and Officer Hurst had little to no time to reflect or think before acting. As you know, the shooting was captured by videotape. The various videotapes from the Fifth Third Bank confirm that less than 30 seconds elapsed between Mr. Lawrence's entering and exiting the bank. In that period of time, fourteen shots were fired - seven from Mr. Lawrence and seven from Officer Hurst. Further, there is no evidence to suggest that Mr. Lawrence had prior knowledge that a police officer would be working security in the bank on the date in question. These circumstances weigh against seeking the death penalty in this case.

Second, Mr. Lawrence's lack of significant prior history of criminal conduct – particularly that of a violent nature - also warrants a punishment other than death in this case. *18 U.S.C. 3592(a)(5).* Mr. Lawrence, thirty years of age, has one prior felony conviction for receiving stolen property (a felony of the fifth degree), in August 30, 2001. Mr. Lawrence received community control for that offense and was discharged from probation after successful completion on December 24, 2003.

**TC28437**

June 2, 2005
Page 2 of 3

Third, Mr. Lawrence's immediate acceptance of responsibility and genuine remorse for the shooting of Officer Hurst warrant a punishment other than death and support our position that the government should not seek the death penalty in this case. By all accounts of the arresting and questioning officers Mr. Lawrence was incredibly forthright about his involvement and his remorse for his actions in this case. Even prior to being arrested, Mr. Lawrence took responsibility for his actions and expressed his remorse through his journal writings which are now in the possession of the government. Mr. Lawrence's journal is evidence that Mr. Lawrence's remorse was not/is not contrived but rather is genuine and sincere.

In addition to accepting responsibility for his actions in the shooting of Officer Hurst, Mr. Lawrence, during questioning by law enforcement in this case, admitted to committing robberies other than that of the Fifth Third Bank. The information that Mr. Lawrence provided regarding these other robberies enabled law enforcement to declassify several earlier robberies as "unsolved". Without a doubt, Mr. Lawrence's spontaneous and continual expression of acceptance, his genuine remorse, and his level of cooperation with law enforcement are unique for a case of this type and are factors to be considered in making the decision as to whether or not to seek death in this matter.

Third, Mr. Lawrence's upbringing and background mitigate against the possible imposition of a death sentence in this case. Daryl Lawrence was born in 1975 while his mother was incarcerated at the Ohio Reformatory for Women. Mr. Lawrence's biological mother died of cancer in 2002; Mr. Lawrence does not know the identity of his biological father.

From shortly after birth, Daryl Lawrence was raised by an "adopted" family. Although well intentioned, they were never able to replace the void created by the desertion of his biological mother and father. Furthermore, his "adopted family" lacked the financial resources, guidance, discipline and time necessary to devote to his upbringing. Consequently, Mr. Lawrence, unlike most children, was forced to grow up on his own without the tools necessary to successfully navigate his way through life.

Fourth, Mr. Lawrence has two children, Kennedy Lawrence and Gabriel Lawrence. These children, and their need to have a father figure in their life mitigate against seeking the death penalty in this case. Kennedy, Mr. Lawrence's daughter, just turned five. Prior to his arrest in this case Mr. Lawrence and Kennedy spent time together and enjoyed a good, strong father-daughter relationship. Since being incarcerated Mr. Lawrence and Kennedy correspond and talk as much as possible. Their communications and contact are incredibly important to Kennedy who talks about her father daily.

Gabriel, Mr. Lawrence's son, was born just six weeks ago. As with Kennedy, Mr. Lawrence intends to communicate and be a father figure to his son as much as possible, circumstances permitting.

**TC28438**

June 2, 2005
Page 3 of 3

Admittedly, Kennedy and Gabriel will likely go through childhood without their father by their side.  He will not be there at school functions, sporting events, first steps, graduations, birthdays or even daily breakfasts and dinners.  Nonetheless, Mr. Lawrence can be of value to his children even if incarcerated for the rest of his life.  Mr. Lawrence has already shown during his time at the Ross County Jail that he recognizes the impact he can have upon his children, through phone calls, letters, and/or visitations.  His children can learn through his mistakes.  We trust that if Kennedy and Gabriel were to be asked, they would rather have a father, even if he were incarcerated for the rest of his life, than to have no father at all.

Fifth, Mr. Lawrence is unlikely to be a high-risk inmate if sentenced to prison as opposed to death row, further supporting our request that you not recommend death in this case.  It is well documented that when Mr. Lawrence surrendered to authorities in this case he did so without incident.  Furthermore, Mr. Lawrence has no crimes of violence on his record; the one felony that he does have is for a theft offense.  Additionally, while incarcerated at the Ross County Jail, Mr. Lawrence has evidenced no violence or even violent tendencies toward any inmates, deputies, or United States Marshals.  Lastly, Mr. Lawrence is less likely to be a high-risk inmate given that as a result of the shooting with Officer Hurst, Mr. Lawrence had one finger amputated and his left arm is almost completely incapacitated.

For the foregoing reasons we respectfully request, on behalf of Mr. Daryl Lawrence, that you not to seek the death penalty in this case and instead go forward in this case as currently indicted.  Should you have any questions or require further explanation regarding any of the information contained herein, please contact us at your earliest convenience.

Thank you in advance for your earnest consideration of this matter.

Sincerely,

*Diane M. Menashe,*
Counsel for Daryl Lawrence

*Kort Gatterdam / DMM*
Kort Gatterdam,
Counsel for Daryl Lawrence

cc:   David M. DeVillers, Assistant United States Attorney
      Michael J. Burns, Assistant United States Attorney

**TC28439**

# Exhibit 68:

# DOJ Presentation Outline

## DOJ PRESENTATION

**Introduction**

**A. Lack of Statutory Support, Given the Facts, to Seek Death.**

1. Counts 7 & 8 deal with the death of Bryan Hurst.

2. 18 USC 2213(a), (d) & (e) (Count 7), permit death to be sought if the murder (which is defined in 18 USC 1111) occurs during the course of a robbery. *18 USC 2113 (e)* The code section provides a term of not less than 10 years and a maximum sentence of death or life imprisonment. However, Federal bank robbery itself carries a 20 year sentence and if life is put in jeopardy or a dangerous weapon is used, a 25 year sentence is authorized. *18 USC 2113(a),(d).* Thus, we can argue that this code section provides a penalty of **10 – Life which is a sufficient penalty, in addition to other crimes in the indictment such that the DP is unwarranted.**

3. 18 USC 1111 defines Murder as the unlawful killing with malice aforethought. *18 USC 1111(a)* Any murder committed during a robbery is murder in the first degree. Murder in the first degree is punishable by death or **imprisonment for life**. *18 USC 1111 (b)* Thus, we can argue that this code section, **authorizing a life penalty, provides a sufficient penalty and deterrent such that the DP is unwarranted.**

4. 18 USC 924(c) & (j) (Count 8) Provides that any person who carries a firearm during the commission of an offense, shall, in addition to the penalty provided for the crime, receive a sentence of not less than 10 years if the firearm is discharged. *18 USC 924(C)(1)(A)(iii)* If the person causes death through the use of the firearm and the killing is first degree murder, shall receive a sentence of death or imprisonment for any term of years **or life.** We again can argue that this section provides a sufficient penalty and deterrent due to the **life sentence authorized without a death specification.**

5. **Intent -** 18 USC 3591 specifies that if the Gov't gets over the first hurdle by charging an offense where death is an option, the Gov't next must prove an intentional killing which can occur in one of four ways. In this case, we can argue that none of the four ways apply:

**TC07277**

(A)  Intentionally killed the victim – 28 seconds from start to finish. No intent to do anything but to avoid being killed.

(B)  Intentionally inflicted serious bodily injury that resulted in the death of the victim – Same as (A).  No intent to harm, intent to rob and to escape without being shot to death.

(C)  Intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person…and the victim died as a result of the act – Daryl contemplated that a life would not be taken.  He sought places that did not have an officer.  He never took hostages nor did he bring accomplices.

(D)  Intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person,… such that participation in the act constituted reckless disregard for human life and the victim died as a result of the act – Daryl did not intentionally engage in an act of violence (the shooting)  He did not go in shooting at people.  He returned fire and the officer was killed as a result.

In sum, the evidence is insufficient to show an intentional killing.  There was no time for Daryl to intent to kill Hurst.

6. 18 USC 3592, mitigating and **aggravating factors**.  Of the 16 aggravating factors, it is arguable that only one applies.  Argue that these factors are supposed to set apart other homicide cases from those where the federal death penalty should be sought.

A)  It is worth noting that even under the best argument from the Gov't, only 2 factors apply.

B)  It is also worth noting that 18 USC 3592(c)(1) which lists certain crimes as aggravators does not list robbery as one such crime.

C)  (c)(8) pecuniary gain, listed in Daryl's indictment.  "The defendant committed the offense as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value."  Daryl didn't kill Officer Hurst for money nor did he intend to kill him when he entered the bank.  This aggravator doesn't fit.  It fits murders for hire, murders for insurance proceeds, etc. but not going into a bank, getting into a gunfight and a person gets killed.

*U.S. v. Chanthadara, 230 F.3d 1237 (10th Cir. 2000),* (c)(8) applies only where the gain was expected "as a result of the victim's death."  If jury allowed to consider if underlying felony committed in expectation of pecuniary gain, then pec. gain aggravator would be automatic where the underlying felony is robbery b/c pec. gain is implicit in the offense of robbery.  Congress expressed in 18 U.S.C. 3592(c)(1) the list of 20

2

TC07278

felonies which automatically aggravate the case to a dp case when death occurs during their commission.  Robbery is not listed among the 20 which suggests pec. gain applies only when murder itself committed as consideration for, or in the expectation of, anything of pec. value." *1263.*

*U.S. v. Cuff, 38 F.Supp.2d 282 (S.D. NY 1999)* - (c)(8) appears to be directed at murder for hire or to collect insurance proceeds, or at least the sort of murder in which pec. gain can be expected to follow as a direct result of the crime.

**D)** (c)(5) The defendant in the commission of the offense or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to 1 or more persons in addition to the victim.  Nobody else was shot by Daryl or Officer Hurst.  Everyone else was down on the ground during the gunfight.  Every crime in which a gun is used necessarily places someone in the area at grave risk.  Is that what this aggravator was designed for?  *Chanthadara at 1261 – "The Constitution requires that a capital sentencing scheme genuinely narrow the class of persons eligible for the death penalty and reasonable justify the imposition of a more severe sentence on the defendant compare to others found guilty of murder."  Zant v. Stephens, 462 U.S. 862, 877 (1983)*  No hostages, no codefendants, no lengthy incident, no multiple shots over an extended period of time, no multiple crime scenes where shootings occurred.  Look at this aggravator compared to others – multiple killings (16); heinous, cruel or depraved manner of committing the offense (6), prior conviction for offense where death or life authorized (3), prior sexual assault conviction (15).  Those are the serious offenses, grave risk is a throw away aggravator that applies in every gun case where death results.  Too arbitrary.

**(E)**  Be prepared to address non-statory aggravating factors such as victim impact (all cases)  and future dangerousness (no evidence of that in this case, look at lack of prior history).   1-6, KG

7. The State death penalty is much more properly suited for prosecution.  Possible specs. in state prosecution – killing of a cop, 2929.04(A)(6); felony murder (kidnapping, agg. robb.), 2929.04(A)(7); 2929.04(A)(3) purpose of escaping detection.  Involved a local cop, not a federal official, doing private security work in a bank.  DM

8. Other Offenses in the indictment – Diane to add how much time he's facing on Counts 1-6.  Goes to argument that he's getting life so why spend all the time and money trying to get death.  DM

9. **Costs** associated with executing someone vs. life imprisonment.  See psr from recent federal cases.  Death case has 2 phases, penalty phase requires psych., mitigation expert, future dangerousness expert,

3

TC07279

2 attorneys.  If found guilty, Daryl **would** get life, no discretion. Specific to this case:  4 prosecutors, 2 federal and 2 state; entire Cols. Police Dept.; FBI; multiple experts on DNA, ballistics, crime scene, etc. Cost savings is more on the defense side.  Appellate rights are different.  Costs of incarceration versus death penalty appeal.  Cost issue part and parcel with "it's a weak statutory aggravator case. "  DM

10. Handout with listing of cases where death was:  1) not sought on similar or more horrendous facts; 2) where death was sought but not obtained on similar or more horrendous facts, due to jury or judge finding; 3) compare and contrast case where co'd's on death row for bank robbery (check and see if one remanded in light of *Ring v. Arizona.*  Co-d's, number of shots, persons taken hostage, no murder for hire, no multiple bodies, not a drug case vs. Daryl's case.  DM

11. Look at Daryl's prior robberies, listed in the indictment.  No cops in bank and nobody shot (have to admit gun went off during 1 robbery). No hostages taken, took the money and ran, same MO.   No substantial planning like the Allen and Holder case where they went in with the intent to kill the security guard, pointed and fired weapons at others, and doused their first getaway vehicle with gasoline to avoid detection.  DM

12. Racial disparity in federal death penalty – U.S. Dept. of Justice Report dated 9/12/00 suggests:  1) from 1995-2000 that of the 682 reviewed for the DP by DOJ, 80% reviewed were minorities.  2) Of those submitted, 72% of the cases where death was sought, the defendant was a minority. 3) US attorneys similarly during the 1995-2000 period recommended seeking death in cases where 74% were minorities.  4) Interracial homicides – 89% of cases submitted for death involve a minority killing a white and 5) US atty. more likely to seek death when black D if V non-black than vice versa.  6) DOJ Supplement – p. 3 Propostion of minority defendants in federal capital cases exceeds the proportion of minority individuals in the general population.  Why are they spending so much money to kill this man with 1 prior non-serious felony? Tie in previous arguments.  KG  20 of last 21 federal dp juries have come back without imposing death.

13. Mitigating factors from our letter to Lockhart.  KG   A)  1 prior non-violent felony conviction in 30 years of life (RSP of laptops from work in 2000, released from parole 12/03); B) no gun charges, no drug charges, no offenses of violence.  C) Rapid incident which started and was over in 28 seconds – shooting itself takes place in about 14 seconds.  No time to think or plan, just react. No prior knowledge a cop

4

**TC07280**

would be there – prior robbery of this bank had no cop. D) Prior robberies do not involve gunfire, hostages, or cops. E) No real family growing up – born to a mom in prison who is dead now, doesn't know his dad – adopted family had their own family problems to deal with – no guidance or discipline growing up – was a gifted athlete – has children (5 and 11 weeks); who need him, even if its through letters, calls and prison visits; F) Acceptance of responsibility – journal written after incident while going to seek treatment, remorse to family, remorse to cops who question him; G) Not likely to be high risk inmate due to no violence in the past, missing a finger and little movement of left arm – religious person who can offer things to other inmates and his family.

14. **Conclusion** – P. 9 of 2000 DOJ Statistical Survey – US Attys. must determine in deciding whether to accept a capital or non-capital case for federal pros., if there is a "**substantial federal interest**" in doing so. Factors to consider – **federal** law enforcement priorities, seriousness of the particular offense, issues specific to the individual defendant such as willingness to cooperate in the prosecution of others.

15. **Conclusion** - Comparing it with other cases for which death was sought, is this the type of case the federal death penalty was enacted for, or is it a case to appease the local police department and let the local prosecutors team up with the federal prosecutors to pose for pictures on TV? Not a major drug offender, mob activity, something across state lines, against a high ranking federal official. This is a very local case involving a local officer and a first time violent offender. He faces a life sentence in federal court and the death sentence in State court. What is the Federal connection? Leave this to the State where they have the ability to punish him if he's found guilty. KG

5

TC07281

# Exhibit 69:

# Eileen Lopez SSA Earnings Statement Excerpt

```
                     ITEMIZED STATEMENT OF EARNINGS
               * * *      FOR SSN XXX-XX-1841      * * *
```

EMPLOYER NUMBER:  34-0606350
WEATHERHEAD CO
300 E 131ST ST
CLEVELAND  OH 44108-0000

| YEAR | 1ST QTR | 2ND QTR | 3RD QTR | 4TH QTR | TOTAL |
|------|---------|---------|---------|---------|-------|
| 1967 |         |         | 300.60  | 1123.66 | $1,424.26 |
| 1968 | 1103.22 | 1025.70 | 1062.69 | 1404.21 | $4,595.82 |
| 1969 | 1231.64 | 989.32  |         | 1236.71 | $3,457.67 |
| 1970 | 836.87  | 1325.60 | 1088.91 | 1356.48 | $4,607.86 |
| 1971 | 1064.59 | 1562.02 | 1350.84 | 1428.03 | $5,405.48 |
| 1972 | 1320.58 | 1393.58 | 1436.55 | 1580.22 | $5,730.93 |
| 1973 | 1470.00 | 1767.55 | 1373.67 | 1638.46 | $6,249.68 |
| 1974 | 825.37  | 286.26  |         |         | $1,111.63 |
| 1975 | 347.12  |         |         |         | $347.12 |

EMPLOYER NUMBER:  31-4361658
CONFECTION PROMOTIONS INC
263 N FRONT STREET
COLUMBUS  OH 43215-0000

| YEAR | 1ST QTR | 2ND QTR | 3RD QTR | 4TH QTR | TOTAL |
|------|---------|---------|---------|---------|-------|
| 1969 |         | 285.33  | 1010.77 |         | $1,296.10 |

EMPLOYER NUMBER:  31-0872933
MYRTLE HUMPHREY
HUMPHREY HOMES
761 E LONG
COLUMBUS  OH 43203-0000

| YEAR | 1ST QTR | 2ND QTR | 3RD QTR | 4TH QTR | TOTAL |
|------|---------|---------|---------|---------|-------|
| 1975 |         |         |         | 1000.00 | $1,000.00 |
| 1976 | 1500.00 | 250.00  |         |         | $1,750.00 |

EMPLOYER NUMBER:  25-1211492
COLUMBUS SERVICES INC
1001 SAMPSON ST
NEW CASTLE  PA 16103-0000

| YEAR | 1ST QTR | 2ND QTR | 3RD QTR | 4TH QTR | TOTAL |
|------|---------|---------|---------|---------|-------|
| 1976 |         | 73.60   | 610.65  |         | $684.25 |

```
*****************************************************************
*********   THERE ARE NO OTHER EARNINGS RECORDED UNDER THIS   *********
*********   SOCIAL SECURITY NUMBER FOR YEAR(S) REQUESTED      *********
*****************************************************************
```

PAGE    4

PC20571

# Exhibit 70:

SEALED