# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,      )
                               )
                    Plaintiff, )
                               )      Case Number 2:05-CR-00011
v.                             )
                               )      JUDGE MICHAEL H. WATSON
DARYL LAWRENCE                 )
                               )      Magistrate Judge Terence P. Kemp
                    Defendant. )


PROPOSED ORDER

Counsel, on behalf of Defendant Daryl Lawrence, has moved for leave to conduct

discovery and requests that the Government produce the following materials in its possession, or

alternatively certify their absence from its files, or submit a verification that all materials

responsive to the particular request have been provided. All materials pertain to the prosecution

and trial of the shooting death of Officer Bryan Hurst and attempted robbery of the Fifth Third

Bank at 6265 East Broad Street, Columbus, Ohio, on January 6, 2005:

1.      Any communications, documents, or information concerning Mr. Lawrence's family members.

2.      Any communications, documents, or information concerning the nature of Officer Hurst's gunshot injury and the effect that injury would have had on Officer Hurst's ability to move and respond during the shooting incident at Fifth Third Bank.

3.      Any communications, documents, or information, including opinions, reports (including interim or amended reports), memoranda, testing results, bench notes, and correspondence, concerning the examination of Officer Hurst's uniform shirt.

4.      Any communications, documents, or information containing internal written policies and standards for examinations concerning firearms distance determinations testing and guidelines for rendering an opinion.

5.      Any communications, documents, and information concerning the decision as to what type of testing to utilize on Officer Hurst's uniform shirt to determine the presence of nitrites or lead.

6.      Any color photographs of Officer Hurst's uniform shirt, at all stages of collection and testing.

7.      Any communications, documents, or information concerning written procedures (including those called Standard Operating Procedures (SOPs)) for firearms distance determinations testing, including procedures for preparation, instrument analysis, instrument calibration, and all required quality control practices.

8.      Any communications, documents, or information concerning cases where the Government or any law enforcement organization or forensic laboratory under its auspices or at its direction has conducted chemical testing to determine the presence of lead or nitrites in the absence of recovering the firing weapon.

9.      A copy of Mark J. Hardy's personnel file and all internal and external proficiency testing results for firearms distance determinations testing administered to him (including sponsoring agency, date(s) performed, responsible analyst, true values, reported results, raw data, scores, related correspondence, and corrective action records, as appropriate).

10.      Any communications, documents, or information containing internal written policies and standards for examinations concerning ejection pattern analysis and guidelines for rendering an opinion.

11.      Any communications, documents, and information concerning the decision not to conduct an ejection pattern analysis in this case.

12.      Any communications, documents, or information concerning cases where the Government or any law enforcement organization or forensic laboratory under its auspices or at its direction has conducted ejection pattern analysis in the absence of recovering the firing weapon.

13.      Any communications, documents, or information concerning any forensic or crime scene reconstruction analysis about Mr. Lawrence's movements and actions inside Fifth Third Bank based on the locations of the spent .40 caliber shell casings.

14.      Any communications, documents, or information concerning physical and forensic evidence that is consistent with the defense theory that Officer Hurst was shot from a distance.

15.      Any communications, documents, or information concerning physical and forensic evidence that is consistent with the defense theory that Officer Hurst was standing in the hallway area adjacent to the teller line of the Fifth Third Bank when he was shot.

16.     Any communications, documents, or information concerning physical and forensic evidence that is consistent with the defense theory that Mr. Lawrence was shooting toward the hallway area adjacent to the teller line of the Fifth Third Bank.

17.     Any communications, documents, or information concerning a crime reconstruction analysis of how the shooting incident occurred.

18.     Any communications, documents, or information concerning the number of frames per second that the video-cameras inside Fifth Third Bank recorded.

19.     Any communications, documents, or information regarding concerns about the quality of the surveillance footage and/or the accuracy of what it depicted, including information concerning the Fifth Third Bank's video-cameras' frames-per-second recording capacity.

20.     Any communications, documents, or information concerning enhancements to the Fifth Third Bank's surveillance footage or to still images taken from the surveillance footage.

21.     Any communications, documents, or information identifying all witnesses to the shooting at Fifth Third Bank on January 6, 2005.

22.     Any communications, documents, or information concerning any interviews conducted with Michelle Johnson and/or Brian Dickerson regarding the shooting at Fifth Third Bank, including the dates and locations of those interviews.

23.     Any communications, documents, or information concerning any statements that Michelle Johnson and/or Brian Dickerson made about the shooting at Fifth Third Bank.

24.     Any communications, documents, or information concerning the decision not to call Michelle Johnson or Brian Dickerson as witnesses at Mr. Lawrence's trial.

25.     Any communications, documents, or information concerning meetings with the testifying eyewitnesses (Marian Large, Heather Clifton, Andrea Ross, Amanda Goodman, Warren Cox, and Angela Karst), including the dates of such meetings, notes or memoranda regarding statements made by the witnesses, and evidence that was shown to the witnesses.

26.     Any and all documents in the possession of the Government from the CDP's case file concerning Officer Hurst's homicide and the related attempted robbery at Fifth Third Bank.

27.     A complete copy of the FBI's case file concerning Officer Hurst's homicide and the related attempted robbery at Fifth Third Bank.

28.     Any and all documents in the possession of the Government from the Fifth Third Bank's case file concerning Officer Hurst's homicide and the related attempted robbery at Fifth Third Bank.

29.     Copies of any and all written, audio- or video-recorded statements (as well as transcriptions thereof) of witnesses (both testifying and non-testifying) concerning Officer Hurst's homicide and the related attempted robbery at Fifth Third Bank.

30.     Copies of all rough drafts of reports or rough notes made by the CDP or FBI pertaining to the investigation, arrest and prosecution of Mr. Lawrence concerning Officer Hurst's homicide and the related attempted robbery at Fifth Third Bank.

31.     Copies of any and all written, oral, video or electronic forensic reports, tests and/or data produced in connection with the investigation, arrest and prosecution of Mr. Lawrence concerning Officer Hurst's homicide and the related attempted robbery at Fifth Third Bank.

32.     Copies of any and all written, oral, video or electronic reports, records, files, witness statements, documents and tangible objects prepared by any other federal, state, or local law enforcement agencies pertaining to the investigation, arrest and prosecution of Mr. Lawrence concerning Officer Hurst's homicide and the related attempted robbery at Fifth Third Bank.

33.     Any communications, documents, or information concerning any interviews conducted with Erica Arnold, Heather Clifton, Warren Cox, Brian Dickerson, Amanda Goodman, Angela Karst, Heather Kinney, Marian Large, Deborah Rader, and Andrea Ross, or any other witnesses inside or immediately outside the bank, regarding the shooting at Fifth Third Bank, including the dates and locations of those interviews. This request includes any interviews conducted by the Government, the FBI, the CDP or employees of Fifth Third Bank.

34.     Any communications, documents, or information concerning any statements made by Erica Arnold, Heather Clifton, Warren Cox, Brian Dickerson, Amanda Goodman, Angela Karst, Heather Kinney, Marian Large, Deborah Rader, and Andrea Ross, or any other witnesses inside or immediately outside the bank, about the shooting at Fifth Third Bank. This request includes any statements these witnesses made to the Government, or to the FBI, the CDP or employees of Fifth Third Bank.

35.     Any communications, documents, or information concerning the events at the Fifth Third Bank at 6265 East Broad Street, Columbus, Ohio on January 6, 2005, reviewed by the FBI's Investigative and Prosecutorial Graphics Unit ("IPGU") and/or relied upon by the IPGU to produce its animated re-creation video.

36.     Any communications, documents, or information about any meetings between members of the IPGU and employees of the U.S. Attorney's Office connected to the

prosecution of Mr. Lawrence's case, including the dates of those meetings and any documents memorializing the substance of those meetings.

37.     Any communications, documents, or information concerning or referencing the possibility that Officer Hurst was fatally wounded somewhere other than behind the teller counter and/or that Officer Hurst was not fatally shot at point-blank range.

38.     Any communications, documents, or information concerning or referencing any expert opinions provided to the Government about the manner in which the shooting occurred, including but not limited to crime scene reconstruction analysis.

39.     Any communications, documents, or information regarding law enforcement officers' impressions, or comments about, of Mr. Lawrence's mental or physical health from the time of his arrest until he was admitted to Grant Hospital after his interrogation, including but not limited to informal notes, electronic communications, other correspondence, memoranda, records, and audio- or video recordings.

40.     Any communications, documents, or information between law enforcement and/or the Government with Grant Hospital staff regarding Mr. Lawrence's mental or physical health at the time of his admission.

41.     Any communications, documents, or information between Mr. Lawrence and law enforcement officers regarding requests for medical assistance or treatment, and/or statements by Mr. Lawrence regarding his mental or physical health, from the time of his arrest until he was admitted to Grant Hospital after his interrogation.



44.     Any communications, documents, or information possessed by the Government, regarding the presence of uniformed police officers in and around the courthouse during Mr. Lawrence's pre-trial and trial proceedings, including any communications to defense counsel to expect such a presence.

45.     Any communications between the Government and the CDP regarding the presence of uniformed police officers in and around the courthouse during Mr. Lawrence's pre-trial and trial proceedings.

46.     Any communications, documents, or information about the CDP informing its employees about the dates of Mr. Lawrence's pre-trial and trial proceedings for purposes of encouraging support and/or attendance.

47 Any communications, documents, or information about CDP employees' attendance at Mr. Lawrence's pre-trial and trial proceedings.



49. Any communications, documents, studies or information at the time of Mr. Lawrence's trial establishing a statistical empirical foundation, or the lack thereof, for the claim that firearms leave unique toolmarks on ammunition components such that a positive "match" can be made based on such toolmarks.

50. Any communications, documents, studies or information regarding objective national standards, or the lack thereof, governing the subjective determination of firearms and toolmarks examiners.

51. Any communications, documents, or information regarding Mark J. Hardy's training in firearms and toolmarks examination at the time of Mr. Lawrence's trial or sentencing.

52. Any communications, documents, or information establishing that Mark J. Hardy's training in firearms and toolmarks examination at the time of Mr. Lawrence's trial or sentencing was consistent with any national standards or practices of certifying organizations, such as the AFTE.

53. Any communications, documents, or information regarding whether Mark J. Hardy had ever attempted certification by the AFTE prior to the time of Mr. Lawrence's trial or sentencing, and the results of any such attempts at certification.

54. Any communications, documents, or information regarding Mark J. Hardy's accuracy rate in conducting firearms and toolmarks examination at the time of Mr. Lawrence's trial or sentencing, including but not limited to any communications, documents, or information about specific cases in which Mr. Hardy's examination had been found to be inaccurate and/or unreliable.

55. Any communications, documents, or information about whether the CDP crime lab in which Mark J. Hardy worked was certified by any organization at the time of Mr. Lawrence's trial or sentencing.

56. Any communications, documents, or information or Standard Operating Procedures (SOPs) for evidence testing, including procedures for preparation, instrument analysis, instrument calibration, and all required quality control practices.

57.     Any communications, documents, or information concerning laboratory quality manuals (however named) in effect at the time Mark J. Hardy's work in this case was performed or when he testified.

58.     Any communications, documents, or information concerning laboratory quality procedures (however named), including internal audit procedures, training and qualification procedures, and document control procedures, in effect at the time Mark J. Hardy's work related to Mr. Lawrence's prosecution was performed or when he testified.

59.     Any communications, documents or information concerning Mark J. Hardy's personnel file and all internal and external proficiency testing results for toolmark identification administered to him (including sponsoring agency, date(s) performed, responsible analyst, true values, reported results, raw data, scores, related correspondence, and corrective action records).

60.     Any communications, documents, or information concerning the examination of the shell casings collected from the September 8, 2004 Sky Bank crime scene and the January 6, 2005 Fifth Third Bank crime scene for the robberies of those banks for which Mr. Lawrence was prosecuted.

61.     Any communications, documents, or information relating to the manufacturer and model of the microscopes used for comparison purposes of the relevant shell casings, and any manuals describing proper uses and maintenance of the instrument.

62.     Any communications, documents, or information containing the CDP's policies and standards for toolmark comparisons and guidelines for rendering an opinion.

63.     Any photomicrographs of the comparison shell casings related to Mr. Lawrence's prosecution.

64.     Any diagrams or photographs of shell casings related to Mr. Lawrence's prosecution, at all stages of collection and testing.

65.     Any communications, documents, or information establishing that the firearm used by Mr. Lawrence during the 2005 Fifth Third Bank shooting leaves, or fails to leave, unique markings on ammunition.

66.     Any communications, documents, or information concerning the Sky Bank robbery on September 8, 2004.

67.     Any communications, documents, or information concerning the Key Bank robbery on August 12, 2004.

68.     Any communications, documents, or information concerning the Fifth Third Bank robbery on January 21, 2004.

69.     Any communications, documents, or information concerning the Kentucky Check Exchange robbery on August 17, 2002.

70.     Any communications, documents, or information regarding the allegations made that Mr. Lawrence committed crimes against Renee Anderson, including but not limited to threatening her with a gun.



78.     Any communications, documents, or information concerning or regarding the decision to prosecute Mr. Lawrence in federal court rather than in state court.

79.     Information as to all capitally eligible homicides in the Southern District of Ohio for the 15 years preceding and including March 2005, including but not limited to:
   a.   Number, race and gender of victims, including surviving victims
   b.   Attendant felonies (e.g., kidnapping, robbery, sexual assault)
   c.   Other aggravating factors.

80.     Information about the individuals accused in those homicides, including but not limited to:
   d.   Prior convictions of the accused, whether or not charged with a capital or federal offense.
   e.   Other unlawful or violent conduct of the accused, adjudicated or unadjudicated,

81.     Regarding the same individuals, any other information claimed to be relevant by federal prosecutors to the decision to seek death or try the case federally (e.g., victim's family wishes).

82.     Any communications, documents, or information concerning or regarding the decision to prosecute Mr. Lawrence in federal court rather than in state court, to proceed with a capitally eligible offense rather than other crime, and to seek the death penalty.

83.     The same information listed under items 1, 2 and 3 for all such cases in any federal jurisdiction

84.     Any communications, documents, or information relating to the United States Attorneys' and Attorney General's consideration over whether to resolve Mr. Lawrence's case with a plea to a sentence of life without possibility of release, or any lesser sentence, and the criteria used to make that determination.

85.     Any communications, documents, or information concerning or regarding jury selection related to the race of prospective jurors.

86.     Any communications, documents, or information concerning or regarding trial or sentencing theories of the case related to race.

87.     Any communications, documents, or information relating to prosecutors' discretion under the Federal Death Penalty Act that leads to the selection of which defendants to prosecute capitally, including data regarding the seeking of the death penalty by location and jurisdiction; the criteria used by United States Attorneys to determine whether or not to seek the death penalty; and the criteria used by the United States Attorney General to determine whether or not to authorize the death penalty and whether or not to reject a settlement or to overrule a United States Attorney's decision not to seek the death penalty in a particular case.

88.     Any communications, documents, or information relating to the United States Attorney's and Attorney General's decision to prosecute Mr. Lawrence capitally and the criteria used to make that determination.

After due consideration, it is hereby ORDERED that for each of the above-enumerated requests:

1.      The Government produce any responsive materials that are in its possession; or

2.      Certify that no such responsive materials are in its possession, and, if applicable, the dates on which any responsive materials were destroyed; or

3.      Submit a verification that all materials responsive to the particular request have already been provided.

4.      For any materials that are withheld, the Government shall expressly specify the discovery request(s) to which they pertain, state the grounds for withholding these materials, and describe the nature of the communications, documents or information not produced or disclosed, and do so in a manner that, without revealing information itself alleged to be privileged or protected, will enable Mr. Lawrence to assess the claim.

SO ORDERED this ___ day of _____, 2016.

_____
Magistrate Judge Terence P. Kemp

# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case Number 2:05-CR-00011 |
| v. | ) | |
| | ) | JUDGE MICHAEL H. WATSON |
| DARYL LAWRENCE | ) | |
| | ) | Magistrate Judge Terence P. Kemp |
| Defendant. | ) | |

PROPOSED ORDER

Counsel, on behalf of Defendant Daryl Lawrence, has moved for leave to conduct

discovery and requests that the Clerk's Office for the Eastern Division of the Southern District of

Ohio produce the following materials in its possession, or alternatively certify their absence:

1. All JS-12 and/or AO-12 forms for the Eastern Division of the Southern District of Ohio for a period dating from 1995 to 2006.

2. All current census estimates the Administrative Office of the Courts provided to the clerk for each year of the AO12s/JS12s requested in item 1.

3. Any communications, documents, or information explaining the process by which grand and petit juries were selected in the Eastern Division of the Southern District of Ohio at the time of Mr. Lawrence's trial.

4. Any communications, documents, or information explaining any changes in the process by which grand and petit juries were selected in the Eastern Division of the Southern District of Ohio since the time of Mr. Lawrence's trial.

5. Any communications, documents, or information concerning statistical information on the make-up of the grand and petit jury venires, according to race, ethnicity, and gender for a period dating from 1995 to 2006 for the Eastern Division of the Southern District of Ohio, and/or the actual numbers of African Americans, Hispanics, and women in those venires.

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████

After due consideration, this request is **GRANTED**.

SO ORDERED this ___ day of _____, 2016.

_____
Magistrate Judge Terence P. Kemp

**Exhibit 3**

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case Number 2:05-CR-00011 |
| v. | ) | |
| | ) | JUDGE MICHAEL H. WATSON |
| DARYL LAWRENCE | ) | |
| | ) | Magistrate Judge Terence P. Kemp |
| Defendant. | ) | |

PROPOSED ORDER

Counsel, on behalf of Defendant Daryl Lawrence, has moved for leave to conduct discovery and requests that any court personnel who were involved in arranging the enhanced security measures for Mr. Lawrence's trial or who were courtroom staff during Mr. Lawrence's trial, produce the following materials in its possession, or alternatively, certify their absence:



1. ████████████████████████████████
████████████████████████████████
██████████████████████████
███████████████

2. █████████████████████████████
██████████████████████████████████
████████████████████████

3. █████████████████████████████████
██████████████████████████

4. Any communications, documents, or information possessed or produced by the Court or court staff regarding the presence of uniformed police officers in and around the courthouse during Mr. Lawrence's pre-trial and trial proceedings, including any communications to defense counsel to expect such a presence.

5. Any communications, documents, or information regarding Columbus Division of Police employees' attendance at Mr. Lawrence's pre-trial and trial proceedings.

■ ████████████████████████████████████████
   ██████████████████████████████████████
   ████████████████████████████████████
   ████████████████████████████████

After due consideration, this request is **GRANTED**.

SO ORDERED this ___ day of _____, 2016.

_____
Magistrate Judge Terence P. Kemp